APPENDIX
I ask the concurrence of the associate Justices to an order directing the Clerk to enter upon the record, and the Reporter to insert in an appendix to his next number, the following statement:
An imputation upon my official conduct has been made, on the ground of culpable omission of duty, for the want of firmness to discharge it. The imputation is without the semblance of foundation, but the public mind is at this time excited, and it may be there is now no adequate relief for the grievance. My purpose is, to perpetuate the evidence for consideration in calm times.
The imputation is made on the ground, of my refusal, after the Governor's avowal of his orders to Col. Kirk to disobey the writs of habeascorpus, to allow the motion for an order to the sheriff of some county to take the prisoners out of the custody of Kirk, by force, if necessary, and bring them before me.
I did refuse to allow the motion and instead think, directed an order to the marshal, and he was instructed to exhibit the order together with a copy of my opinion to his Excellency, and to report to me, should the Governor refuse to revoke his orders.
This was done for the reason, that under the Constitution, all of the physical power of the State is vested in the executive, and the judiciary has not the power to call upon the "posse comitatis," or to "acceptvolunteers," to come in collision with a military power called into active service by the executive.
As against Gen. Hoke, or Col. Mallet, during the late war, it was my duty to enforce the writ. I had the power; because I could fall back on the Governor. But as against the Governor, who is the commander-in-chief of all the able bodied men in the State, it was (350) otherwise; that is the point. Every one, unless his eyes are shut, must see it.
I held full conference with the four Associate Justices. We all concurred in the opinion, that the power of the Judiciary was exhausted, asagainst the Governor, by declaring the law, and leaving the responsibility of declining to obey it, upon him. The law was declared in terms as explicit as I was able to use. I had no communication with Gov. Holden, directly or indirectly, in regard to the matter, save what is contained in my opinions, and the correspondence reported 64 N.C. appendix.
R. M. PEARSON, C.J.
February 27th, 1871. *Page 268 
The Associate Justices have heard the statement of the Chief Justice with approbation. And they order that it be spread upon the minutes, and that it be appended to the ensuing volume of the Reports.
So long as the assaults upon the Chief Justice were confined to the partisan press, we would have thought it unnecessary, if not improper, to give to them the importance which this action does: but we observe that there has been introduced into a co-ordinate branch of the Government — the House of Representatives — a bill, reciting matters to the prejudice of the Chief Justice; and we think that his fame, and the fame of the Court with which he has been connected for twenty-three years under all parties, and the fame of the State which is so intimately connected with his own, not only justify but require this vindication.
This Court was in session at the time the habeas corpus cases were before the Chief Justice at Chambers. They were pending for a considerable time, and were elaborately argued. It was a moment (351) of great interest to the State, and to citizens; and there was much excitement. The Chief Justice was in constant communication with the Associate Justices: and, while the opinions delivered were in language his own, his conclusions had the sanction of the Associates. And there was not at any time, any other purpose manifested than an earnest desire to declare the law correctly; to preserve the liberty of the citizen, and the safety of the State. We thought then, and think now, that he did declare the law correctly, that he exhausted his power to secure the liberty of the citizen, and that he did preserve the safety of the State.
It is a pleasure to his Associates to do him the further justice to declare, that he is one of the most learned jurists of the age, and that he is singularly free from political and other prejudices, and that under all, and often under the most trying circumstances, he has had the moral courage to put himself in jeopardy to maintain the rights of the humblest citizen whose liberty or interests have been under consideration before him.
 E. G. READE, A.J. ROB'T. P. DICK, A.J. THOMAS SETTLE, A.J.
 February 27th, 1871.
I concur in placing the communication from the Chief Justice on the records of this Court. I did not sit with him in the habeas corpus *Page 269 
cases of Moore and others. He did me the honor, however, to consult with me in the first stage of those trials while I was in the city, and although there are some portions of his opinion in which I did not concur, I did entirely concur with him in his conclusion to refuse to order any Sheriff or other person to summon a posse to rescue to the prisoners from Kirk. I believed then, as I believe now, that (352) no law authorized him to do so; neither did the Constitution which is a part of the law. To have done so, would have been to do an act without authority, which in all probability would have produced bloodshed, and in that case, he would have deservedly shared the blame. To have sent a rabble of citizens without organization, or arms, or provisions, or lawful discipline, against Kirk's soldiers, in the face of the Governor's expressed determination to resist them, would have been insane, and but for its serious consequences, ridiculous. That the Chief Justice was honest in all that he did, and utterly guiltless of any complicity with Governor Holden in the arrest or detention of the prisoners, I know, as well as I can know anything of the kind. I have known the Chief Justice for about thirty years. During all that time he has been in all respects, publicly and personally, what he is now; a lover of liberty as defined by the common law and Magna Charta, and too much of a lawyer to be capable of being a selfish politician, much less a conspirator. As to the scandalous charges of a portion of the press, I do not think they deserve notice.
WILL. B. RODMAN, J.
February 27th, 1871. *Page 270 
[EDITORS' NOTE: THIS PAGE IS BLANK.] *Page 271 
(353)